WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mach 1 Global Services Incorporated, | No. CV-20-02018-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Tramar Global LLC, *et al.*, | |
| Defendants. | |

At issue is Defendant Tramar Global LLC's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue,[1] (Doc. 10, Mot.), to which Plaintiff Mach 1 Global Services Incorporated filed a Response, (Doc. 15, Resp.), and Defendant filed a Reply, (Doc. 16, Reply). The Court has reviewed the parties' briefs and finds these matters appropriate for decision without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court grants Defendant's Motion to Dismiss, denies as moot Defendant's request for alternative relief, and denies Plaintiff's request for summary judgment incorporated into its Response.

**I.    BACKGROUND**

Plaintiff Mach 1 is an Arizona corporation headquartered in Tempe, Arizona. (Doc. 1–3 at 11–17, Complaint at 1.) It is an interstate and international forwarder and carrier of property under C.F.R. § 365.101(a) and is registered with the U.S. Department of

---

[1] Despite the caption of Defendant's Motion, Defendant's brief fails to argue for dismissal based on improper venue. The Court consequently declines to consider propriety of venue here.

Transportation, Federal Motor Carrier Safety Administration as a motor carrier and freight forwarder. (Compl. ¶ 2.) Defendant Tramar is a North Carolina Limited Liability Company that imports bedding and linens that it sells to retail customers around the country who then resell the products under their own brands. (Compl. ¶ 4.) Tramar sells its products nationwide, including in Arizona. (Mot. Ex. 1 ¶ 2.) However, it has no offices or employees located in Arizona and pays no taxes there. (Mot. Ex. 1 ¶ 2.)

On August 7, 2019, Tramar and Mach 1 executed an agreement titled "Invoicing Profile," which provided a contact address for Mach 1 in Downey, California. (Compl. Ex. C at 1–2.) No representative of Tramar traveled to Arizona to conduct any negotiations, and no "real negotiations" preceded the execution of this agreement. (Mot. Ex. 1 ¶¶ 5–6.) Tramar understood that all communications between Mach 1 and Tramar leading up to execution of the agreement were conducted by phone or electronic communication between Tramar in North Carolina and Mach 1's representative in California, (Mot. Ex. 1 ¶ 7), although Mach 1 asserts that at least some of the "contract negotiations" were conducted with Mach 1 personnel located in Arizona. (Resp. at 6.) On January 7, 2020, Tramar executed a power of attorney authorizing Mach 1 to act on behalf of Tramar in customs procedures. (Compl. Ex. B.)

Mach 1 claims to have performed several cargo transports for Tramar in or about 2019 and 2020 pursuant to their agreement. (Compl. ¶¶ 1, 6, 12–14; Resp. Ex. 2.) None of these shipments were alleged to have been made from or to Arizona, and none of the provided evidence indicates any Arizona origin or destination. (Mot. Ex. 1 ¶ 9; Compl. Ex. A; Resp. Ex. 2.) Mach 1 sent Tramar invoices for those cargo deliveries, (Compl. ¶ 15), a consolidated invoice dated August 5, 2020, (Compl. ¶ 15; Ex. A at 2), and a statement of account dated September 15, 2020, (Compl. ¶ 15; Ex. A at 1). The consolidated invoice lists a Mach 1 address in Downey, California, (Compl. Ex. A at 2), and the statement of account lists a Mach 1 address in Tempe, Arizona, (Compl. Ex. A at 1). Both documents request that payment be mailed to a Tempe address. (Compl. Ex. A at 1–2.) Over a period of about six months, Tramar sent several payments to that Tempe address. (Resp. Ex. 5.)

Tramar's alleged failure to pay for all the services listed on these documents forms the basis of Mach 1's Complaint. (Compl. ¶ 16.)

## II. LEGAL STANDARD

For a federal court to adjudicate a matter, it must have jurisdiction over the parties. *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982). The party bringing the action has the burden of establishing that personal jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182–83 (1936)); *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). When a defendant moves, prior to trial, to dismiss a complaint for lack of personal jurisdiction, the plaintiff must "'come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.'" *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)).

Because there is no statutory method for resolving the question of personal jurisdiction, "the mode of determination is left to the trial court." *Data Disc,* 557 F.2d at 1285 (citing *Gibbs v. Buck*, 307 U.S. 66, 71–72 (1939)). Where, as here, a court resolves the question of personal jurisdiction upon motions and supporting documents, the plaintiff "must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss." *Id.* In determining whether the plaintiff has met that burden, the "uncontroverted allegations in [the plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) (citation omitted).

To establish personal jurisdiction over a nonresident defendant, a plaintiff must show that the forum state's long-arm statute confers jurisdiction over the defendant and that the exercise of jurisdiction comports with constitutional principles of due process. *Id.*; *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 269 (9th Cir. 1995). Arizona's long-arm statute allows the exercise of personal jurisdiction to the same extent as the

United States Constitution. *See* Ariz. R. Civ. Proc. 4.2(a); *Cybersell v. Cybersell*, 130 F.3d 414, 416 (9th Cir. 1997); *A. Uberti & C. v. Leonardo*, 892 P.2d 1354, 1358 (Ariz. 1995) (stating that under Rule 4.2(a), "Arizona will exert personal jurisdiction over a nonresident litigant to the maximum extent allowed by the federal constitution"). Thus, a court in Arizona may exercise personal jurisdiction over a nonresident defendant so long as doing so accords with constitutional principles of due process. *Cybersell*, 130 F.3d at 416.

Due process requires that a nonresident defendant have sufficient minimum contacts with the forum state so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); *see also Data Disc,* 557 F.2d at 1287. Courts recognize two bases for personal jurisdiction within the confines of due process: "(1) 'general jurisdiction' which arises when a defendant's contacts with the forum state are so pervasive as to justify the exercise of jurisdiction over the defendant in all matters; and (2) 'specific jurisdiction' which arises out of the defendant's contacts with the forum state giving rise to the subject litigation." *Birder v. Jockey's Guild, Inc.*, 444 F. Supp. 2d 1005, 1008 (C.D. Cal. 2006).

### III.   ANALYSIS

#### A.   General Jurisdiction

In its Complaint, Mach 1 asserts that an Arizona court has personal jurisdiction over Tramar because Tramar sells and delivers products to customers who operate in Arizona, customers of Tramar resell its products in Arizona, and Mach 1—headquartered in Arizona—arranged deliveries for Tramar. (Compl. ¶¶ 4–7.)

Tramar argues that it is not subject to general personal jurisdiction in Arizona. (Mot. at 3–5.) It notes that the Arizona Court of Appeals recently held that Wal-Mart, despite a major physical presence and employment of tens of thousands in Arizona, was not within the general jurisdiction of Arizona courts in *Wal-Mart Stores, Inc. v. LeMaire*, 395 P.3d 1116 (Ariz. Ct. App. 2017), and contends that there is nothing exceptional about its sales operations in Arizona that bring it under Arizona courts' general jurisdiction. (Mot. at 4-5.)

In its Response, Mach 1 begins its jurisdictional argument by immediately addressing specific jurisdiction, (Resp. at 4 ("When a defendant's activities in the forum state are not so pervasive as to subject it to general jurisdiction, the court may still find specific jurisdiction…")), and fails to respond to Tramar's argument against the Court's general jurisdiction over it. The Court takes from this omission that Mach 1 concedes that Tramar is not within this Court's general jurisdiction.

### B. Specific Jurisdiction

Tramar next asserts that it is not subject to specific jurisdiction in Arizona. (Mot. at 6–14.) It argues that its actions meet none of the elements of the standard that determines whether personal jurisdiction arises over it in this case: that 1) its contract with a resident of the forum state alone is not a deliberate availment of the privilege of conducting activities in the forum, 2) Mach 1's claim does not arise out of or result from Tramar's forum-related activities, and 3) exercise of jurisdiction here would be unreasonable. (Mot. at 6–14.) In its Response, Mach 1 contends that the Court has specific jurisdiction over Tramar in this case because Tramar "directed" its "business relations" to Arizona-headquartered Mach 1 by electronically communicating with it, directing physical payments to its Arizona address, and discussing and finalizing various business arrangements with Mach 1 personnel located in Arizona. (Resp. at 3–6.) Mach 1 further claims for the first time in its Response that Tramar "acquiesce[d]" to certain "Terms and Conditions" that included a waiver of a personal-jurisdiction defense in any lawsuit brought by Mach 1. (Resp. at 7; *see also* Ex. 7 at 2 ¶ 13.) Mach 1 further asserts that this Court's exercise of personal jurisdiction here would be reasonable for the same reasons it gives to argue for personal jurisdiction. (Resp. at 6.)

Whether a court may exercise specific jurisdiction in a particular case turns on the extent of the defendant's contact with the forum and the degree to which the plaintiff's suit is related to the defendant's contacts. *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006). The Ninth Circuit uses the following approach to determine whether a court may exercise specific jurisdiction over a nonresident

defendant: (1) the nonresident defendant must do some act in or consummate some transaction with the forum, or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;[2] (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable. *Data Disc*, 557 F.2d at 1287.

The plaintiff bears the burden of establishing the first two requirements of the test. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). If the plaintiff establishes the first two requirements, the burden shifts to the defendant to establish that the third requirement is not met. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)). All three requirements must be met for the exercise of jurisdiction to comport with constitutional principles of due process. *Omeluk*, 52 F.3d at 270.

To meet the first element—that the defendant purposefully directed activities at the forum state—the plaintiff must show the defendant "either (1) 'purposefully availed' himself of the privilege of conducting activities in the forum, or (2) 'purposefully directed' his activities towards the forum." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (quoting *Schwarzenegger*, 374 F.3d at 802). The purposeful availment analysis is generally applied to claims sounding in contract. *Global Commodities Trading Group, Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020). Because Mach 1 claims breach of contract and no tortious conduct on the part of Tramar, purposeful availment is the proper analytical framework. *Id.*

---

[2] Mach 1 appears to be confusing the purpose of this element as helping to determine the defendant's contacts with the plaintiff itself rather than the defendant's contacts with the plaintiff's chosen *forum* when it alleges that "Tramar purposefully and freely availed itself of the services and privilege of conducting business with Mach 1 in Arizona." (Resp. at 6.) In fact, the United States Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff . . . and the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Mach 1's own contacts with Arizona are not dispositive in determining whether Tramar's due process rights would be violated by this Court's exercise of specific jurisdiction over Tramar in this case. *See id.* at 285.

"Purposeful availment requires that the defendant engage in some form of affirmative conduct allowing or promoting the transaction of business within the forum state." *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 386 (9th Cir. 1990), *rev'd on other grounds*, 499 U.S. 585 (1991). A defendant's contract with a forum entity cannot alone automatically establish sufficient contacts to give rise to specific jurisdiction over the defendant. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). When determining whether a contract establishes the contacts necessary for personal jurisdiction, courts must evaluate negotiations prior to the contract, contemplated future consequences of the contract, the terms of the contract, and the parties' actual course of dealing. *Gray & Co. v. Firstenberg Machinery Co. Inc.*, 913 F.2d 758, 760 (9th Cir. 1990) (quoting *Burger King*, 471 U.S. at 479).

Tramar's contacts with Arizona as alleged by Mach 1 are insufficient to establish that Tramar purposefully availed itself of the privilege of conducting activities in Arizona. In the Ninth Circuit, "ordinarily 'use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state.'" *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985) (quoting *Thos. P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica*, 614 F.2d 1247, 1254 (9th Cir. 1980)). This standard has been applied to email and other forms of electronic communication in the years since *Peterson*. *See, e.g.*, *Mesa Air Group, Inc. v. Aps Capital Corp.*, No. 2:07-cv-00920-HRH, 2007 WL 9724582, at *4 (D. Ariz. 2007 Sept. 18, 2007) (noting that phone calls and emails culminating in a contract for a one-time sale of a bankruptcy claim with no "obvious nexus" to Arizona was too attenuated to establish purposeful availment); *TriWest Healthcare Alliance Corp. v. Geneva Woods Pharmacy LLC*, No. CV-19-02052-PHX-SMB, 2020 WL 248286, at *5 (D. Ariz. Jan. 16, 2020) (holding that email, phone calls, and letters by the defendant to the plaintiff in Arizona did not qualify as purposeful activity invoking the protection of the state of Arizona). This Court accordingly finds that Tramar's telephonic, electronic, and written communications to Mach 1 in Arizona are attenuated contacts that do not establish purposeful availment.

This includes the payments addressed and sent to Mach 1 in Arizona because payment sent specifically to an Arizona address was a result, unforeseeable to Tramar, of compliance with the terms of the original contract negotiated between North Carolina and California, rather than a specific consequence of the contract that Tramar affirmatively sought.

The contract entered into by Mach 1 and Tramar out of which this action arose did not establish the contacts necessary for an Arizona court to have specific jurisdiction over Tramar. Both parties agree that all communications leading up to contract execution were conducted electronically and telephonically and that Tramar did not send any representative to Arizona to engage in those communications. None of the evidence provided by either party indicates that Tramar contemplated any Arizona-related consequences to the contract. Indeed, leading up to the contract's execution, Tramar believed it was communicating with Mach 1 in California. The terms of the contract indicate no nexus with Arizona. Finally, the parties' actual course of dealing involved no deliveries made by Mach 1 for Tramar that either originated or terminated in Arizona. Tramar did make payments to Mach 1 at its Tempe, Arizona, address, but, again, such contact is too attenuated to establish purposeful availment.

To the extent Mach 1 argues Tramar has sufficient contacts with Arizona because Mach 1 is located in Arizona and was allegedly injured by Tramar's alleged breach of contract, that contact is insufficient to confer personal jurisdiction over Defendant. *Walden*, 571 U.S. 277 at 290 (noting that mere injury to a forum-resident plaintiff is not a sufficient connection to establish personal jurisdiction over a non-resident defendant).

Because Mach 1 has failed to meet its burden to demonstrate that the Court has personal jurisdiction over Tramar, the Court must dismiss this action. *See In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir. 2013) ("If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law").

### C. Waiver of Personal Jurisdiction Defense

Mach 1 claims in its Response that Tramar "acquiesce[d]" to certain "Terms and Conditions" that included a waiver of a personal-jurisdiction defense in any lawsuit brought by Mach 1. (Resp. at 7; *see also* Ex. 7 at 2 ¶ 13.) To the extent Mach 1 attempted to provide evidence to support this claim, Mach 1 simply attached Exhibit 7 to its Response without an affidavit, declaration, or any foundation. Nothing on the face of the Exhibit indicates that Tramar agreed to or even knew of those terms, and Mach 1 provided no evidence or explanation to show Tramar's knowledge of or agreement to them.

Mr. Fletcher states in his affidavit that Mr. Crooke "signed, acknowledged and agreed to the Terms and Conditions in the Mach 1 Conditions of Contract" agreeing to jurisdiction in Arizona and waiving the right to raise lack of personal jurisdiction as a defense in any lawsuit commenced by Mach 1. (Resp. Ex. 8 at 3.) Neither his affidavit nor any other submission from Mach 1 links the terms on Exhibit 7 to the terms that Mr. Fletcher asserts that Mr. Crooke of Tramar "signed, acknowledged and agreed to." Indeed, Tramar denies knowledge of the existence of any such "signed, acknowledged and agreed to" terms. (Reply at 6.)

Given the lack of foundation for Mach 1's Exhibit 7 to its Response, the limits of what the Exhibit directly shows, and Tramar's denial of knowledge that it had "signed, acknowledged and agreed to" such terms, the Court does not find the Exhibit to be reliable evidence of Mach 1's claim that Tramar waived its right to a jurisdictional defense against Mach 1's Complaint.

### D. Mach 1's Request for Summary Judgment

In its Response, Mach 1 also requests that the Court "deny the Motion [to Dismiss] and treat the matter as one subject to summary judgment based on the submissions of Mach 1 in unequivocal contradiction to the position and purported evidence of Defendant Tramar Global…." (Resp. at 1.) Mach 1 claims that the Exhibits it attached to its Response "clearly show that there is no genuine issue as to any material question of fact to be scrutinized in discovery and trial" and that with them "Mach 1 shows it is entitled to

- 9 -

judgment as a matter of law." (Resp. at 8.) Mach 1 supports this request by citing two WWII-era cases from outside the Ninth Circuit. (Resp. at 8.) The Court denies this inappropriate and unsupported request.

First, Mach 1 has not met its burden to show that the Court has personal jurisdiction over Tramar, and the Court will dismiss this action accordingly. Second, Federal Rule of Civil Procedure 12(d) allows the Court to convert a motion to dismiss under Rule 12(b)(6) or 12(c) into one for summary judgment when considering matters outside the pleadings. However, the Motion to Dismiss before the Court is made pursuant to Rule 12(b)(2) and so is not affected by Rule 12(d). In short, Mach 1's request lacks any merit, and the cases it cites are inapposite. The Court thus denies Mach 1's unsupported request for summary judgment.

### E. Transfer as Alternative Relief

Since the Court grants Tramar's Motion to Dismiss, it denies as moot Tramar's request for transfer of venue as alternative relief.

## IV. CONCLUSION

Plaintiff Mach 1 Global Services Incorporated has not met its burden to show that Defendant Tramar Global LLC either has substantial, continuous, systematic activities in Arizona or that it purposefully availed itself of the privilege of conducting activities in Arizona, and the Court must therefore dismiss this action for lack of personal jurisdiction.

**IT IS THEREFORE ORDERED** granting Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Doc. 10).

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment accordingly and close this case.

Dated this 19th day of May, 2021.

Honorable John J. Tuchi
United States District Judge